IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Carolyn Yvonne Murphy Taylor, | ) | Civil Action No. 3:07-983-JFA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Columbia, Charles Austin, | ) | **REPORT AND RECOMMENDATION** |
| in his official capacity as City Manager | ) | |
| and his individual capacity, Donnie | ) | |
| Balzeigler, in his official capacity as Code | ) | |
| Enforcement Officer and his individual | ) | |
| capacity, Larry McCall, in his official | ) | |
| capacity as Chief Code Enforcement Officer | ) | |
| and his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Carolyn Yvonne Murphy Taylor ("Taylor") is a resident of the City of Columbia

("the City"), South Carolina.  In her *pro se* amended complaint, she alleges that the City and several

of its employees violated her constitutional rights and subjected her to the intentional infliction of

emotional distress.[1]  The case was automatically referred to the undersigned pursuant to 28 U.S.C.

§ 636 and Local Rule 73.02(B)(e), D.S.C.  There are three motions for summary judgment pending.

The City and Charles P. Austin, Sr., ("Austin"), its City Manger at relevant times, filed one and Larry

McCall, the City's Chief Code Enforcement Officer at relevant times, filed another.[2]  Taylor has filed

---

[1]Taylor also alleges a claim of malicious prosecution, but concedes that she cannot proceed
on it because an appeal is pending.

[2]Several Defendants were dismissed by order of the Honorable Joseph F. Anderson, Jr.,
United States District Judge, filed February 29, 2008.  Another Defendant, Donnie Balzeigler
(continued...)

her own motion for summary judgment with respect to one of her claims. Orders pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) were issued and the parties have briefed the issues.

## **Standard for Summary Judgment**

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See*, *e.g.*, Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Celotex, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed.R.Civ.P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 818 (4th Cir.1995). Nonetheless, the nonmoving party is entitled to have " 'the credibility of his evidence as forecast assumed.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990) (en banc) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually

---

[2](...continued)
("Balzeigler") has not appeared.

unsupportable claims from proceeding to trial. <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir.1987) (citing <u>Celotex</u>, 477 U.S. at 323-24).

Rule 56(c) allows summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Generally, evidence must be presented on a summary judgment motion in a form that would be admissible at trial. <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954 (4th Cir. 1996).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. <u>Taft Broad. Co. v. United States</u>, 929 F.2d 240, 248 (6th Cir.1991); <u>ITCO Corp. v. Michelin Tire Corp.</u>, 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment-even where ... both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." <u>Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.</u>, 627 F.Supp. 170, 172 (D.Md.1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." <u>Nafco Oil & Gas, Inc. v. Appleman</u>, 380 F.2d 323, 325 (10th Cir.1967); *see also* <u>McKenzie v. Sawyer</u>, 684 F.2d 62, 68 n. 3 (D.C.Cir.1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion.").

**Facts**

1. Taylor was the resident and owner of the property at 2295 Byrnes Drive in the City ("the Property") during all relevant times. (Pl.Dep., 9).

2. The City has adopted ordinances concerning maintenance of property within its jurisdiction.

3. In 2001 Taylor received notice of a violation of the City's Ordinances §§ 8-31, 8-32, 8-33, 8-34, 8-35, 8-301, 8-302, 8-304, and 8-305 relating to trash and debris located on the Property as well as overgrowth. (Pl.Dep., 44 and Complaint, Ex. 2).

4. Taylor failed to bring the Property into compliance, and in August of 2001, the City entered the Property and removed the debris. (Pl.Dep., 90-91).[3]

5. On June 27, 2001, the City adopted ordinance 2000-027, the International Property Maintenance Code ("IPMC") which was codified at § 5-151 of the City's Code of Ordinances and redesignated as "Property Maintenance." (Ex. 6)[4]

6. The IPMC did not repeal the other ordinances dealing with trash, debris, and overgrowth which the City cited to clear the Property in

---

[3]The City's actions in 2001 are not a part of Taylor's present allegations.

[4]Plaintiff has attached a number of exhibits to her amended complaint. There appears to be no issue as to their authenticity or admissibility for the purpose of summary judgment. Both Taylor and the Defendants refer to the exhibits, hereinafter "Ex __". Exhibit 2 is missing from the amended complaint, but it is attached to the original complaint.

2001. The result was overlapping ordinances relating to property maintenance within the City. (Mylott Aff., ¶¶ 8-10).[5]

7. On December 9, 2004, Balzeigler issued Taylor a "Warning - Notice of Violation of the City's ordinances §§ 8-31, 8-32, 8-33, 8-34, 8-35, 8-301, 8-302, 8-304, and 8-305. Under the "Remarks" section of the Notice, Balzeigler wrote, "(r)emove all misc. items, materials, debris, and objects from premises grounds."

8. Taylor did not remove the items from her yard. Balzeigler issued Taylor a "Uniform Ordinance Summons" on March 11, 2005, with a trial date of April 11, 2005 for violation of "Ordinance Section No. 2000-027," described as "International Property Management Unlawful Acts."

9. On March 16, 2005, Taylor received a copy of page 9 of the 2003 IPMC in the mail from Balzeigler (Amended Complaint, ¶ 18 and Ex. 3).

10. On March 17, 2005, Taylor received a copy of the City's Ordinance Codes in the mail from Balzeigler. The Ordinance Codes reflect that 2000-27, the "Ordinance Section No." listed on the summons served on Taylor, describes the offense as "International Property

---

[5]The affidavit of Marc S. Mylott is attached to McCall's memorandum in support of his motion for summary judgment.

Maintenance: Unlawful Acts (1st Offense)." (Amended Complaint, ¶ 20, and Ex. 4).

11.    On April 11, 2005, Taylor appeared in Municipal Court, posted a bond of $153.75, and requested a jury trial. Taylor also went to McCall's office and inspected the 2003 version of the IPMC. (Amended Complaint, ¶ 22).

12.    On May 11, 2005, Taylor received written notice that her trial was scheduled for May 23, 2005. At that point Taylor retained an attorney who gained a continuance. (Amended Complaint, ¶ 25).

13.    On May 16, 2005, Taylor returned to McCall's office and obtained a complete copy of the 2000 IPMC. McCall explained to Taylor that the 2000 IPMC was in effect at the time the summons was issued to her. (Amended Complaint, ¶ 23 and Ex. 6; McCall Aff., ¶ 22; and Mylott Aff., ¶ 9).[6]

14.    Taylor's counsel was granted another continuance in June of 2005. Taylor appeared for trial on July 28, 2005. The case was again continued because her attorney had not received notice of the trial. (Amended Complaint, ¶¶ 26 and 27).

---

[6]The record reflects that the City adopted the 2003 version of the IPMC, effective August 17, 2005, after Taylor received the notice and summons. (Ex. 12, p. 21).

15.    On August 1, 2005, a City "Inspector", alleged to be Balzeigler, attempted to serve a summons on Taylor's attorney. (Amended Complaint, ¶ 28, Exs. 7 and 8).

16.    Taylor's attorney asked for an additional attorney's fee for continued representation. Taylor at that point decide to comply with the notice issued in December of 2004 by removing the debris from her yard. Taylor received a notice for trial scheduled for August 25, 2005, and she appeared, as did her former attorney. Pictures reflecting Taylor's efforts at remediation were shown to the prosecutor. The case was continued. (Amended Complaint, ¶ 30; Pl.Dep., 94).

17.    Taylor cleaned her yard by placing some items on the street for pickup by the City,[7] moving some items inside the house, and moving other behind a privacy fence which surrounded a shed on the interior of the property. (Amend Complaint, ¶ 30; Pl.Dep., 96).

18.    On September 3, 2005, Taylor received a notice for trial to be held September 23, 2005. (Amended Complaint, ¶ 31).

19.    The day before the scheduled trial Taylor called Balzeigler to come to the Property for an inspection. Balzeigler came to the Property and telephoned McCall who also came to the Property. Taylor declined

---

[7]According to Taylor, she disposed of "(t)oys and - all kinds of different things, clothing, books, metal stuff. I mean, I think the City had to bring two or three truckloads, you know, dump trucks that I had put stuff on the street. (Pl.Dep., 96).

to allow them to inspect behind the security fence. (Amended Complaint, ¶ 32).

20. The trial was continued until January 13, 2006. Taylor and Balzeigler both appeared. The City sought and was granted permission from the court to enter the Property and inspect behind the privacy fence. The case was continued to allow for the inspection. (Amended Complaint, ¶ 36; Ex. 9).

21. The Municipal Judge issued a written order allowing the inspection of the Property pursuant to § 104.4 of the IPMC on February 10, 2006. There is no allegation or evidence that the inspection ever occurred. (Ex. 11).

22. Taylor appeared for trial on March 10, 2006. During a lengthy discussion, Taylor moved to dismiss the charge against her because she did not receive the proper notice, i.e., the City did not follow the procedure proscribed in the IPMC. The court reviewed the relevant documents, and denied the motion. A jury was selected. However, Taylor made a remark which caused the court to dismiss the jury and continue the case. (Ex. 12).

23. The prosecutor prepared a proposed order denying Taylor's oral motion to dismiss, but it appears the order was never signed. (Exs. 14-18).

24.    On November 28, 2006, Taylor filed a written motion to dismiss the charge against her. (Ex. 20).

25.    Taylor appeared for trial on November 30, 2006. The City moved to nolle pros the charge because Balzeigler had left employment with the City and was unavailable. Taylor objected, insisting that the court rule on her motion to dismiss. The court did not rule on Taylor's motion and the case was *nolle prossed*. (Ex. 21).

26.    Taylor filed an appeal which appears to remain pending. (Ex. 22).

## Discussion

Taylor asserts six separate claims in her amended complaint. Four of the claims are brought pursuant to 42 U.S.C. § 1983. Taylor asserts that her rights to procedural due process, substantive due process, and equal protection were violated. Further, she asserts that Austin and the City failed to instruct and supervise the other Defendants. Taylor also asserts a conspiracy to deny her constitutional rights pursuant to 42 U.S.C. § 1985. Last, she asserts that the Defendants committed the state law tort of intentional infliction of emotional distress or outrage in their dealings with her.

### 1. § 1983

Title 42 U.S.C. § 1983 provides a means for redress for the deprivation of federal constitutional and statutory rights by state government actors. It states in part:

> Every person who, under color of statute, ordinance, regulation, custom, or usage of any state...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...

Generally, an aggrieved party must allege and prove that he/she was injured by the deprivation of his/her constitutional rights by a person acting under the color of state law. Monroe v. Pope, 365 U.S. 167, 168-169 (1961).

## 2. Due Process

The Fourteenth Amendment to the United States Constitution provides in part that no state may "deprive any person of life, liberty, or property without due process of law." Section 1983 provides a remedy for violation of Due Process claims. The courts recognize three kinds of claims which may be brought pursuant to § 1983 under the Due Process Clause:

> This general rule applies in a straightforward way to two of the three kinds of § 1983 claims that may be brought against the State under the Due Process Clause of the Fourteenth Amendment. First, the Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, *e.g.,* freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S., at 331, 106 S.Ct., at 664. As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken. *Id.*, at 338, 106 S.Ct., at 678 (STEVENS, J., concurring in judgments). A plaintiff, under Monroe v. Pape, may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights.

> The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* Parratt, 451 U.S., at 537, 101 S.Ct., at 1913; Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property"). The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine

the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

Zinermon v. Burch, 494 U.S. 113, 125 (1990).

Taylor asserts that her rights to procedural due process and substantive due process have been violated. "In order to prevail on either a procedural or substantive due process claim, [Plaintiff] must first demonstrate that [she was] deprived of 'life, liberty or property' by governmental action." Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Defendants assert that they are entitled to summary judgment because Taylor has not shown that she was deprived of property or liberty by their actions. Taylor has not directly responded to this argument.

Taylor was given a notice and later a summons to appear in court for an alleged violation of the IPMC. She was never taken into custody or arrested in connection with the alleged violation. She posted a bond and requested a jury trial. Eventually, the charge was *nolle prossed.* Thus, Taylor has not shown that she was deprived of her liberty. Further, this case does not relate to the City's actions in 2001 when it entered onto the Property and cleared it of debris. The case only involves the 2005 citation for storage of property and debris on the Property. There is no allegation or evidence that Defendants entered the Property or removed Taylor's possessions after notice was given to her. She alleges that she decided to remove the property when her attorney asked for an additional fee to represent her.

Taylor alleges the right "to own personal property and to store the personal property in the yard of her real property." (Amended Complaint, ¶ 71). She also alleges that the Defendants (1) "charged her with a violation of the IPMC without giving her proper notice as required by the IPMC"; (2) used the IPMC "to control personal property stored in her yard"; and (3) made

"unreasonable demands on Taylor to clean her yard and personal property." (Amended Complaint, ¶ 67). Thus, Taylor has not shown that the Defendants deprived her of any property with or without due process of law.

Defendants are entitled to summary judgment on Taylor's claims of procedural and substantive due process because she has not alleged or shown a deprivation of liberty or property.

### a. Procedural Due Process

Even if Taylor could show that she was deprived of liberty or property, Defendants would be entitled to summary judgment because she has not shown that the procedures used were constitutionally inadequate.

The thrust of Taylor's claims is that the notice issued to her on December 9, 2004 was inadequate because it did not specifically comply with the notice provisions of the IPMC. The notice provisions are listed in § 107.2 of the IPMC. (*See* Ex. 6, p. 3). That section provides that a suspected violator be given pre-charging notice of the suspected violation and it is required that the notice:

1.  Be in writing.

2.  Include a description of the real estate sufficient for identification.

3.  Include a statement of the violation or violations and why the notice is being issued.

4.  Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.

5.  Inform the property owner of the right to appeal.

The undersigned concludes that the notice issued to Taylor did not comply with § 107.2 because (1) it cited code sections other than the IPMC and (2) it did not inform Taylor of a right to

appeal.[8]  However, the fact that the notice originally given was insufficient as required by the IPMC does not necessarily compel a conclusion that Taylor's procedural due process rights were violated. The record shows that after the notice was delivered, Taylor was given notice of the procedures and all her rights because McCall gave her a copy of the 2000 version of the IPMC.  Taylor acknowledges that she received the copy and it is attached to her amended complaint. (Ex. 5).

The concept of due process does not compel strict compliance with notification when a procedure is established by statute or ordinance. Instead, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1, 13 (1978).  *See also* Richter v. Maryland, 590 F.Supp.2d 730 (D.Md. 2008).

Here Taylor received a copy of the relevant ordinance, i.e., the 2000 IPMC. Any defect in the notice was cured upon receipt.  Further, she was in contact with McCall and Balzeigler throughout the process.  She had notice of the alleged violation of the IPMC and the opportunity to seek redress under the procedures stated therein.  Instead, Taylor decided to challenge the adequacy of the notice. She continued this argument throughout her case, and the issue of whether or not the notice was adequate is the basis of her pending appeal.

### b. Substantive Due Process

To establish a claim of substantive due process a plaintiff must show that:

---

[8]Taylor also asserts that the notice did not contain a "correction order" allowing a reasonable time to bring the Property into compliance with the IPMC.  However, the notice actually delivered to Taylor contains a "failure to abate" notice and allowed her 10 days to "remove all misc. items, materials, debris and objects".

1.      She had property or a property interest;

2.      The State deprived her of this property or property interest; and

3.      The State's action falls so far beyond the out limits of legitimate governmental action that no process could cure the deficiency.

Sylvia Dev. Corp. v. Calvert County, Maryland, 48 F.3d 810, 817 (4th Cir. 1995).

The concept of substantive due process is much more limited in scope than that of procedural due process. For substantive due process to apply, governmental action must be "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protection or of adequate rectification by any post-deprivation state remedies. Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991), *cert. denied*, 502 U.S. 1097 (1992).

As discussed above, Taylor owned the debris in her yard, but the City never removed any of it. For this reason, Taylor's claim of a violation of substantive due process fails. Further, "the protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994). *See also* Lewis v. Board of Educ. of Talbot County, 262 F.Supp.2d 608, 616 (D.Md. 2003).

In Hawkins v. Freeman, 195 F.3d 732 (4th Cir. 1999), the Fourth Circuit discussed the principles that must be used in considering a claim of substantive due process based on executive action:

1.      First, ...courts must be reluctant to expand the concept of substantive due process because guideposts for reasonable decision making in this uncharted area are scarce and open ended which means that courts must exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [judges].
                    *                    *                    *

14

3.     In executive act cases, the issue of fatal arbitrariness should be addressed as a threshold question, asking whether the challenged conduct was so egregious, so outrageous, that it may be said to shock the contemporary conscience.

*Id.* at 738-739 (Internal citations and quotation marks omitted).

Taylor complains of executive action, i.e., being issued a notice and summons for violating the IPMC because she had objects and refuse stored in her yard. The actions of the City, even if the notice was not sufficient, hardly shock the contemporary conscience. Most municipalities have adopted ordinances regulating land use within their boundaries. The IPMC is an example of common ordinances dealing with such issues. *See* <u>Richter v. Maryland</u>, 590 F.Supp.2d at 738 ("The towing of a car [resulting in state destruction of the vehicle], even on an erroneous pretextual basis, simply does not rise to the level of violating substantive due process rights.")[9]

### 3. Equal Protection

Taylor alleges that the Defendants violated her right to equal protection of the law. An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." *See* <u>Plyler v. Doe</u>, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a

---

[9]The undersigned notes that Taylor's claim of a violation of her substantive due process rights appears to be alleged against previously dismissed Defendants. (*See* Amended Complaint, ¶¶ 70-76).

member of a suspect class he must prove that the distinction between himself and others similarly situated was not reasonably related to some legitimate (governmental) purpose. *See* Turner v. Safley, 482 U.S. 78, 89 (1987).

Taylor's equal protection argument rests on the same grounds as her Due Process arguments, i.e., "(a)n inadequate notice of violation is a violation of Plaintiff's constitutional rights of due process of law, both procedural and substantive, and equal protection of law under 42 U.S.C. § 1983." (*See* Taylor's response to McCall's motion for summary judgment, p. 5). Thus, Taylor appears to argue that serving her with a notice of violation that did not strictly comply with the IPMC violated her right to equal protection under the law.

As discussed above, the basis of a claim of violation of equal protection must be that the Plaintiff was treated differently than other similarly-situated persons. Taylor has produced no evidence of disparate treatment. During her deposition, Taylor testified that the notice she received from Balzeigler was different from the notice received by other residents of the City. However, she could not identify any other resident. (Pl.Dep., 290-291). Included in the record as a part of Taylor's response to McCall's motion for summary judgment is an affidavit of Mamie L. Jackson. She states that her experience was similar to that of Taylor. A copy of the notice of violation given to Jackson and attached to her affidavit is substantially similar to the violation notice given to Taylor.

### 4. Municipal Liability

Taylor describes her fourth claim as "refusing or neglecting to prevent" in violation of § 1983. The undersigned construes this cause of action as a claim against the City, and Austin in his official

capacity, for failing to train, supervise and discipline its Code Enforcement Officers, McCall[10] and Balzeigler, pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

In <u>Monell</u>, the Supreme Court held that municipalities and local governments are "persons" within the meaning of § 1983 and may be liable in certain circumstances. *Id.* at 690. However, the court held that a municipality may not be subjected to vicarious liability based on the doctrine of respondeat superior. *Id.* at 691. Instead, municipal liability under § 1983 "arises only where the offensive acts of the city employees are taken in furtherance of some municipal 'policy or custom.'" <u>Milligan v. City of Newport News</u>, 743 F.2d 227, 230 (4th Cir. 1984) (quoting <u>Monell</u> at 694). In <u>Monell</u>, government liability was predicated on the adoption of an unconstitutional ordinance, i.e., pregnant employees were forced to take unpaid maternity leave before medically required. Municipal liability may also be found "in informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1385-1386 (4th Cir. 1987). Custom, on the other hand, "may be found in 'persistent and widespread...practices of [municipal] officials [which] although not authorized by written law, [are] so permanent and well settled as to have the force of law.'" <u>Neward v. Borders</u>, ___ F.Supp. 2d ___, 2009 WL 2778103, at *3 (W.D.Va. Sept. 2, 2009) (quoting <u>Monell</u> and <u>Spell</u>). A policy or custom may also "be inferred from continued inaction in the face of a known history of widespread deprivations on the part of city employees." <u>Milligan</u>, 743 F.2d at 229-230. To succeed under this theory, a plaintiff must show that the municipality's "deliberate indifference" resulted in a policy or

---

[10]McCall has submitted an affidavit which states that at the times alleged in the amended complaint, even though he was the City's Chief Code Enforcement Officer, he supervised a "vector control team" and did not supervise code enforcement officers. (McCall Aff., ¶ 3).

custom leading to constitutional deprivation. <u>Neward,</u> at *3 citing <u>Jones v. Welham</u>, 104 F.3d 620, 626 (4th Cir. 1997).

Taylor's claim fails for several reasons. First, Taylor does not challenge the constitutionality or any of the City's ordinances. Second, Taylor has not shown a violation of her right to due process or equal protection as discussed above. Third, Taylor has not identified any policy or custom of the City which would give rise to § 1983 liability. At best she has shown that code enforcement officers cited overlapping ordinances in their violation notices to her and Jackson. Last, the record establishes the procedure for training code enforcement officers. *See* Austin Aff., ¶¶ 6-7 and Mylott Dep. 73-77.

### 5. Conspiracy Under § 1985

Taylor alleges that Balzeigler and McCall conspired to deprive her of due process and equal protection of the laws in violation of 42 U.S.C. § 1985.[11] That section provides in part that two or more persons may not "conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws." 42 U.S.C. § 1985(3). In order to establish a claim under this section, Taylor must show: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." <u>Simmons v. Poe</u>, 47 F.3d 1370, 1376 (4th Cir. 1995); <u>Kent v. Maryland Transp.Auth.</u>, 2007 WL 5415558 at *8 (D.Md. May 1, 2007) (quoting <u>Simmons</u>).

---

[11]The Defendants who were previously dismissed are also alleged to be a part of the conspiracy.

In *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971), the Supreme Court held that § 1983(5) includes conspiracies of private individuals. However, the Court limited this holding to require a plaintiff to show that an actionable private conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Byrd v. Hopson*, 265 F.Supp.2d 594, 603 (W.D.N.C. 2003), *aff'd.* 2004 WL 1770261 (4th Cir. 2004), (quoting *Griffin v. Breckenridge*).

In response to the motion for summary judgment of the City and Austin, who are not alleged to be part of the conspiracy,[12] Taylor offers the following argument:

> There is evidence of an ongoing conspiracy to remove personal property stored in yards and unregistered vehicles[13] that are parked on private property by code enforcement officers and inspectors, the Mayor and city Council Members and other City employees. The impetus is the rid the City of "blight to improve the quality of citizens." The City of Columbia has overlooked citizens' constitutional rights to privacy under the 4th Amendment and the constitutional rights under the 14th Amendment to due process and equal protection of the law.

Taylor makes no allegation in her complaint and offers no argument that the alleged conspiracy was based on her race or any other class-based animus.[14] Further, as discussed above, Taylor has not been deprived of any constitutional right.

---

[12]Taylor does not address the conspiracy in her memorandum in opposition to McCall's motion for summary judgment.

[13]In an affidavit attached to her memorandum in opposition to McCall's motion for summary judgment, Taylor discusses the City's attempts to remove abandoned vehicles from her property. However, it does not appear that the City sought to remove vehicles from her property by the notice of violation and summons which are the subject of this action.

[14]It appears that Taylor, Austin, McCall, and Balzeigler are all African-American. (McCall Mem. in Support of Summary Judgment, pp. 18-19).

**6. Intentional Infliction of Emotional Distress**

Taylor alleges that Defendants "intentionally and deliberately inflicted emotional distress" upon her in violation of South Carolina law.

South Carolina expressly recognized the cause of action of intentional infliction of emotional distress, sometimes referred to as "outrage," in <u>Ford v. Hutson</u>, 276 S.E.2d 776 (S.C. 1981). To recover under the tort of outrage, a plaintiff must establish the following elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;

> (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community";

> (3) the actions of the defendant caused the plaintiff's emotional distress; and

> (4) the emotional distressed suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it."

*Id.*, at 778 (quoting <u>Vicnire v. Ford Motor Credit Co.</u>, 401 A.2d 148 (Me. 1979))(internal citations omitted); *see also* <u>Wright v. Sparrow</u>, 381 S.E.2d 503, 505 (S.C. Ct. App. 1989). In considering the defendants' motion for summary judgment, the court must initially determine whether the conduct complained of "'may reasonably be regarded as so extreme and outrageous as to permit recovery, and only where reasonable persons may differ is the question of one for the jury.'" <u>Holtzscheiter v. Thomson Newspapers, Inc.</u>, 411 S.E.2d 664, 666 (S.C. 1991) (quoting <u>Todd v. South Carolina Farm Bureau Mut. Ins. Co.</u>, 321 S.E.2d 602, 609 (S.C. Ct. App. 1984), quashed on other grounds, 336 S.E.2d 472 (S.C. 1985); *see also* <u>Barber v. Whirlpool Corp.</u>, 34 F.3d 1268, 1276 (4th Cir. 1994) ("It is the court's responsibility to first determine as a matter of law whether or not the conduct was outrageous before submitting that question to the jury.").

The defendants' conduct was not sufficiently outrageous or intolerable so as to support a reasonable finding of outrage or intentional infliction of emotional distress. *See, e.g.*, Hainer v. American Med. Int'l, Inc., 492 S.E.2d 103, 109 (S.C. 1997)(Supreme Court affirmed trial court's directed verdict against plaintiff on her outrage claim, holding that her allegation that a hospital wrongfully reported her misconduct to a state disciplinary agency, even if the report was filed in bad faith and with malice, did not rise to the level of outrage); Barber, *supra*, (no outrageous conduct where employee, who was accused of theft and later terminated, was subjected to forty-minute meeting where his supervisor was verbally abusive, causing him to cry and to spend the entire weekend after the incident in bedroom and to contemplate suicide); Gattison v. South Carolina State College, 456 S.E.2d 414 (S.C. Ct. App. 1995)(mere "unprofessional and inappropriate" conduct did not exceed all possible bounds of decency); Corder v. Champion Rd. Mach. Int'l Corp., 324 S.E.2d 79 (S.C. Ct. App. 1984)(mere retaliatory discharge for filing worker's compensation claim, absent claims of verbal assaults or hostile, abusive encounters, did not rise to level required for tort of outrage), *cert. denied*, 332 S.E.2d 533 (S.C. 1985); Brown v. Pearson, 483 S.E.2d 477, 485 (S.C.Ct. App. 1977)(plaintiffs' allegations, that a church covered up allegations of sexual abuse, did not establish a jury question).

Even if Defendants' actions rose to this level, Taylor's claim would be barred. Under South Carolina law, the South Carolina Tort Claims Act ("SCTCA"), S.C.Code Ann., § 15-78-10, *et. seq.,* "is the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents." S.C.Code Ann. § 15-78-20(b). "Governmental entity" is defined as "the State and its political subdivisions" including municipalities. S.C.Code Ann. § 15-78-30(d); Wells v. City of Lynchburg, 501 S.E.2d 746 (S.C. Ct.App. 1998); Staubes v. City of Folly Beach, 529

S.E.2d 543 (S.C. 2000); <u>Richardson v. City of Columbia</u>, 532 S.E.2d 10 (S.C.Ct.App. 2000); and

<u>Hawkins v. City of Greenville</u>, 594 S.E. 2d 557 (S.C.Ct.App. 2004). Further, the SCTCA "is the

exclusive and sole remedy for any employee of a governmental entity while acting within the scope

of the employee's official duty." S.C.Code Ann. § 15-78-200.

Taylor has not alleged or shown that any of the employees named in the amended complaint

acted outside the scope of their employment. Further, the tort of intentional infliction of emotional

distress is excluded from the definition of "loss" for which a plaintiff may recover pursuant to the

SCTCA. S.C.Code Ann. § 15-78-30(f) and <u>Ward v. City of North Myrtle Beach</u>, 457 F.Supp.2d 625,

647 (D.S.C. 2006).

### 7. Contempt

By order dated March 25, 2009, the undersigned granted in part Taylor's motion to compel

McCall to respond to certain interrogatories under oath and to a document production request. Taylor

asserts that McCall's responses pursuant to that order violate Rule 33, Fed.R.Civ.P. and, therefore,

he should be held in contempt pursuant to Rule 37, Fed.R.Civ.P. Review of the response, attached

to Taylor's motion for contempt, shows that counsel signed the interrogatory and document

production and that McCall signed a verification as to his interrogatories. Taylor argues that this

procedure violates Rule 33(b) which requires that interrogatories must be signed by the party under

oath, but that counsel may make objections. She cites <u>U.S. v. 58.16 Acres of Land</u>, 66 F.R.D. 570

(E.D.Ill. 1975) which held that interrogatories which are not answered under oath must be

resubmitted.

Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be

answered separately and fully in writing under oath." Rule 33(b)(5) states that "[t]he person who

makes the answers must sign them, and then attorney who objects must sign any objection." Both counsel and McCall have signed. Counsel signed the interrogatories and the response document production which contained objections, and McCall signed a blanket verification of the interrogatories to the extent that no objection was raised. The undersigned finds nothing in the Rule or in the case cited by Taylor that prohibits this procedure.

### Conclusion

Based on review of the record, it is recommended that:

1.  Plaintiff's motion for summary judgment (Doc.No. 141) be **denied**;

2.  Plaintiff's motion for contempt (Doc.No. 146) be **denied**;

3.  McCall's motion for summary judgment (Doc. No. 130) be **granted**;

4.  The summary judgment motion of the City and Austin (Doc.No. 138) be **granted**;

5.  The claims against Balzeigler be **dismissed** sua sponte.

Joseph R. McCrory
United States Magistrate Judge

October 27, 2009
Columbia, South Carolina